## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| JEFFREY TUTER, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED; | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:22-cv-00282-RK |
| v. | ) ) | |
| FREUD AMERICA, INC., | ) ) | |
| Defendant. | ) ) | |

## ORDER

Plaintiff Jeffrey Tuter has filed a class action complaint against Defendant Freud America, Inc., involving one of Defendant's products, a bonded abrasive wheel that is attached to various power tools and used to cut materials like metal and concrete. Plaintiff asserts multiple statutory and common law claims under Missouri law against Defendant centered on allegations that Defendant concealed or omitted the abrasive wheels' shelf life (or expiration date) and that if used after they have expired, the abrasive wheels give way, crack, split, explode, and fail. Before the Court is Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 9.) The parties have fully briefed the motion, including filing supplemental authority and suggestions. (Docs. 10, 17, 29, 31-1.) After careful consideration and for the reasons below, Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**, as follows:

    (1) Defendant's motion to dismiss Count One is **DENIED**; and

    (2) Defendant's motion to dismiss Counts Two, Three, Four, and Five is **GRANTED**, and these counts are **DISMISSED** as barred by the economic loss doctrine.

## I.    Background[1]

Defendant manufactures, produces, distributes, and sells at least thirty types of bonded abrasive wheels under the "Diablo Tools" brand, to which the Court refers as "Diablo abrasive

---

[1] In considering Defendant's motion to dismiss, the Court takes the facts pleaded in Plaintiff's complaint as true and construes them in the light most favorable to Plaintiff as the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

wheels." (Doc. 1-1 at 5, ¶ 11.) The Diablo abrasive wheels are attached to power tools such as grinders and chop saws to cut materials like metal and concrete. (*Id.*) They have a shelf life or expiration date, and if they are used past their expiration date, they "will give way, crack, split, explode and fail." (*Id.* at 6, ¶ 13.) However, Defendant does not advertise, package, label, or otherwise provide notice to consumers of the shelf life of this product or that the wheels will fail if used after reaching their shelf-life date. (*Id.* at ¶¶ 12, 13.) Plaintiff alleges that "[i]ndustry standards" require a clear expiration date on the Diablo abrasive wheels. (*Id.* at 7, ¶ 15.) In support, Plaintiff specifically points to a handbook published by the Health and Safety Executive, "Safety in use of abrasive wheels," requiring an expiration date to be placed on bonded abrasive wheels: "All organic bonded wheels for hand-held applications will bear a use-by date of three years from the date of manufacture." (*Id.* at ¶ 15.)

Plaintiff alleges he purchased one or more Diablo abrasive wheels within the last two years, and at the time he made the purchase(s), he was not aware they would "give[] way, crack[], split[], explode[], and fail[] if used after [their] shelf life." (*Id.* at 4, ¶ 6.) Plaintiff alleges he suffered economic damages because "the product he purchased was worth less than the product he thought he had purchased had Defendant not omitted material facts." (*Id.* at 11, ¶ 31.) Both individually and on behalf of a proposed class for other purchasers of a Diablo abrasive wheel, Plaintiff only seeks as damages a "refund of monies paid as a result of his purchase." [2] (*Id.* at ¶ 17; 9, ¶ 24.) In addition, Plaintiff seeks "appropriate injunctive relief, enjoining the Defendant from selling the [Diablo abrasive wheels] and ordering it to warn consumers that the [Diablo abrasive wheels] expire[]." (*Id.* at 19.)

Plaintiff initially filed this class action in the Circuit Court of Jackson County, Missouri, asserting five counts: Count One – a claim under the Missouri Merchandising Practices Act ("MMPA"); Count Two – a claim for unjust enrichment; Counts Three and Four – claims for strict liability (design defect and failure to warn, respectively); and Count Five – negligence. (*Id.* at 10-18.) Defendant removed the case to federal court under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). (Doc. 1.) Defendant now seeks to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim.

---

[2] The class action complaint specifically excludes "any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the [Diablo abrasive wheels] because [they] failed when used after the expiration date." (Doc. 1-1 at 10, ¶ 25.)

## II.  Article III Standing

Although neither party expressly considered the issue, the Court *sua sponte* considers the issue of whether Plaintiff has established Article III standing to proceed in federal court, and asked the parties to provide supplemental briefing on the issue.  (Docs. 33, 35, 36); *see Int'l Ass'n of Fire Fighters, Local 2665 v. City of Clayton*, 320 F.3d 849, 850 (8th Cir. 2003) (recognizing that federal courts have "an independent obligation to examine their own jurisdiction," including constitutional or Article III standing) (citations and quotation marks omitted).

Under the Constitution, federal courts are courts of limited jurisdiction.  *See* U.S. Const. art. III, § 2 (federal judicial power extends to "Cases" and "Controversies").  The doctrine of Article III standing is "rooted in the traditional understanding of a case or controversy," and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (citations omitted).  The Supreme Court long ago explained that to cross the threshold into federal court plaintiffs – including named plaintiffs in a class action lawsuit[3] – must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 560-61 (1992)) (other citation omitted)).  These elements – an injury in fact, traceability, and redressability – are the "'irreducible constitutional minimum of [Article III] standing.'" *Id.* (quoting *Lujan*, 605 U.S. at 560).  Particularly relevant here appears to be the Article III standing requirement that the plaintiff has suffered an injury in fact:  that is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted).

In *Lujan*, the Supreme Court recognized that "each [jurisdictional] element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." 504 U.S. 555, 561 (1992) (collecting cases).  The Supreme Court also recognized that "general factual allegations of injury resulting from the defendant's conduct may suffice" to demonstrate an injury in fact at the early pleading stage.  *Id.* at 561 (citation and quotation marks omitted).  To

---

[3] Named plaintiffs in a class action lawsuit "must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6 (citation and quotation marks omitted).

demonstrate standing even at the pleading stage some factual allegation is required, however. *Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005) ("If the plaintiff offers no factual allegations, specific or general, demonstrating an injury in fact, the court should dismiss the claim.") (citation omitted).[4] The question here is whether Plaintiff has adequately pleaded an actual and particularized injury in fact to demonstrate Article IIII standing.

This class action lawsuit is, at its core, a products liability lawsuit (albeit one seeking damages only for alleged economic rather than personal or property injury or damage). In the Eighth Circuit, to demonstrate Article III standing and more specifically an injury in fact in this kind of lawsuit, plaintiffs must show a manifest defect in the product they purchased. *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (Article III standing in product-liability lawsuit seeking damages under various state law claims for negligence, violation of the Nebraska Uniform Deceptive Trade Practices Act, violation of the Nebraska Consumer Protection Act, violation of other state consumer protection laws, and for breach of contract is satisfied only where a plaintiff alleges "*their* product *actually exhibited* the alleged defect"; it is not enough that a plaintiff has alleged that the "product line contains a defect or that a product is at risk for manifesting this defect"). The Eighth Circuit reaffirmed this basic principle in two product-liability cases also brought under state consumer protection laws that are instructive: *In re Polaris Marketing, Sales Practices, and Products Liability Litigation*, 9 F.4th 793 (8th Cir. 2021), and *Johannessohn v. Polaris Industries, Inc.*, 9 F.4th 981 (8th Cir. 2022).

---

[4] A clear dispute appears to have arisen within the Eighth Circuit whether the general-factual-allegation standard recognized by the Supreme Court in *Lujan* for examining Article III standing at the early pleadings stage remains the operative standard following the Supreme Court's seminal pleadings-standard cases in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Compare Huizenga v. Indep. Sch. Dist.*, 44 F.4th 806, 811-12 (8th Cir. 2022) (applying the general-allegation standard to the question of standing at the early pleadings stage), *with Hawse v. Page*, 7 F.4th 685, 688-89 & 689 n.6 (8th Cir. 2021) (requiring a plaintiff to "allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing," and expressly questioning the continued applicability of *Lujan*'s general-allegation language post-*Twombly/Iqbal*) (citations omitted).

Post-*Twombly* and *Iqbal*, the Eighth Circuit has generally continued to recognize *Lujan*'s general-allegation language to evaluate a jurisdictional challenge to standing at the pleading stage. *See, e.g. City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569-70 (8th Cir. 2007); *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). Because the Supreme Court does not appear to have specifically addressed this issue and the Eighth Circuit has not definitively resolved the growing inter-circuit dispute, the Court is bound to defer to the earlier opinion and will consider whether Plaintiff adequately pleads "general factual allegations" sufficient to demonstrate standing at this early stage in the litigation. *See Mader v. United States*, 654 F.3d 794 (8th Cir. 2011) (en banc) ("when faced with conflicting panel opinions, the earliest opinion must be followed").

Both *Polaris* and *Johannessohn* were class action lawsuits asserting claims under various state consumer protection laws based on an alleged design defect for excessive heat in certain ATVs. *Polaris*, 9 F.4th at 794-95; *Johannessohn*, 9 F.4th at 987-88; *see also Johannessohn*, 450 F. Supp. 3d 931, 957 (D. Minn. Mar. 31, 2020) (*Johannessohn* involved claims asserted under the MMPA); *In re Polaris Mtkg., Sales Pracs., & Prods. Liab. Litig.*, No. 18-cv-0939 (MWM/DTS), 2020 LW 919259, at *2 (D. Minn. Feb. 26, 2020). In both cases, the Eighth Circuit concluded that plaintiffs or class members whose ATVs had not caught fire had not demonstrated a sufficient particularized and actual injury to enjoy Article III standing. *Polaris*, 9 F.4th at 796; *Johannessohn*, 987-88. And even more significantly, the Eighth Circuit held these "no-fire purchasers" lacked Article III standing notwithstanding their assertion of an economic injury to the extent they argued they had overpaid for the ATV in light of the alleged heat defect. *Polaris*, 9 F.4th at 796; *Johannessohn*, 987-88. Specifically, in *Johannessohn*, the Eighth Circuit explained:

> Appellants try to reframe the issue by saying that there is an inherent defect common to all Polaris ATVs. This misses the mark. That ATVs run "hot" is not the subject of our inquiry [i.e., whether Article III standing is satisfied]; what matters is whether the heat caused injury. . . . Of course, increased temperatures lead to greater risks of injury. But even if the ATVs run "hot," Article III standing will only rest on the actual injury Polaris owners suffer when they use their vehicles at high temperatures.
>
> Appellants' attempt to sidestep the manifest defect rule fails. They say that the manifest defect line of cases is inapposite because they can show economic injury by the mere fact that they paid an inflated purchase price. They also claim the average ATV buyer would not pay the sticker price if they knew how hot the engine ran. In other words, because some buyers did not receive the benefit of the bargain, all buyers should have paid less for their ATVs. And because all class members paid sticker price, all class members suffered an economic injury. At its core, Appellants' argument is that purchasers without manifest defects should be able to piggyback on the injury caused to those with manifest defects. That theory is in direct conflict with the manifest defect rule and does not create an Article III injury-in-fact. *See, e.g.*, *O'Neill*, 574 F.3d at 504.

9 F.4th at 987-88. As the Eighth Circuit put it in *Johannessohn*: "In this circuit, plaintiffs claiming economic injury do not have Article III standing in product defect cases unless they show a manifest defect." *Id.* at 988.

The manifest-defect rule applied to cases in the products-liability context is not new. In both *Polaris* and *Johannessohn*, the Eighth Circuit principally relied on two important earlier cases for application of the manifest-defect rule in products liability cases in this circuit: *O'Neil v.*

5

*Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009) and *Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999). The more recent of the two, *O'Neil*, involved a class action complaint against a manufacturer of allegedly defective cribs with a drop-side, allowing the height of one side of the crib to be adjusted to a lower height. 574 F.3d at 502. The class action sought relief, among others, under state law for breach of implied warranty, unjust enrichment, and claims under state consumer protection statutes. *Id.* at 503. The Eighth Circuit held on appeal that the class action complaint failed to state a claim[5] because the plaintiffs did not allege the drop-side crib they purchased manifested a defect. *Id.* at 503 (noting that plaintiffs allege the cribs are defective because the drop-side can separate from the crib frame but that the plaintiffs "do not allege . . . that such a separation has ever occurred in their crib"). As in *Polaris* and *Johannessohn* to come later, the *O'Neil* Court also rejected the argument that the plaintiffs suffered an economic harm because they did not receive the benefit of their bargain because of the manifest-defect rule, recognizing:

> This case is similar to other no-injury cases, in that the O'Neils have attempted to refashion what is at its core a no-injury products liability suit into a suit based in contract. *See Rivera v. Wyeth-Ayers Labs.*, 283 F.3d 315, 320 (5th Cir. 2002). This refashioning was necessitated by the nature of their suit because economic loss – the only loss that they could reasonably claim – is only "recoverable in contract, if at all."

*Id.* at 504 (citation omitted).

Similarly, in *Briehl*, the Eighth Circuit rejected state-law claims (including under state consumer protection statutes) asserted against the manufacturer of vehicles based on an allegedly defective component-part – the anti-lock braking system ("ABS"). *See* 172 F.3d at 625. There, the plaintiffs alleged that the defendant car manufacturer designed the defective ABS system, knew

---

[5] In *Polaris*, the Eighth Circuit recognized that *O'Neil* (and *Briehl* for that matter) discussed the injury issue in the context of a Rule 12(b)(6) claims-pleading matter rather than as a standing (or jurisdictional) pleadings matter. 9 F.4th at 797. The *Polaris* Court noted that in *Wallace*, it had viewed the injury issue through the lens of standing (a jurisdictional issue) rather than as a claims-pleading matter. *Id.* at 797 (citing *Wallace*, 747 F.3d 1025). Thus, although *Polaris* concerned Article III standing, the Court still relied on the principles stated in *O'Neil* and *Briehl*, even though they viewed the matter as claims-pleading matter. Other district courts in this district have sometimes continued to view this injury issue as implicating Rule 12(b)(6) and a plaintiff's claims-pleading burden. *See Hammock v. Harbor Freight Tools USA, Inc.*, No. 22-CV-00312-SRB, 2022 WL 3205017, at * (W.D. Mo. Aug. 8, 2022) (relying on *O'Neil* in granting defendant's motion to dismiss for failure to state a claim in a products liability case because "Plaintiffs do not allege that the Products they themselves purchased have cracked, failed, or otherwise manifested a defect"). Although the underlying principles are largely the same, the Court follows the Eighth Circuit's lead in *Wallace* and *Polaris* and treats this issue as one invoking standing as a jurisdictional issue rather than as a claims-pleading matter.

6

it was defective, and concealed this information from the public. *Id.* at 626. The complaint "explicitly disclaimed any intent to seek recovery for personal injuries or property damage suffered," and sought only economic damages for lost resale value and "overpayment for the vehicles at the time of purchase." *Id.* On appeal, the Eighth Circuit held the plaintiffs failed to state a claim because they did not allege a "manifest defect," i.e., that the ABS brakes in *their* vehicle had malfunctioned or failed. *Id.* at 627-28 (holding "[w]here, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies"). Similar to the cases above, the Eighth Circuit in *Briehl* also rejected baldly asserted economic-loss theory of harm without a manifest defect where the plaintiffs did not allege that any member of the class had actually sold a vehicle at a reduced value. *Id.* at 628-29.

In addition to relying on *O'Neil* and *Briehl* in finding that Article III standing was not satisfied in *Polaris* and *Johannessohn*, the Eighth Circuit also distinguished those cases (*Polaris* and *Johannessohn*) from an earlier products liability class action in which Article III standing *was* satisfied: *In re Zurn Pex Plumbing Products Liability Litigation*, 644 F.3d 604 (8th Cir. 2011).

*Zurn* was a class action lawsuit seeking relief under various state consumer protection laws and claims for warranty and negligence claims based on an alleged defect in brass fittings used in plumbing systems that made them susceptible to stress corrosion cracking when exposed to water. *Id.* at 608-09. On appeal, the defendant argued that some members of the "warranty class" lacked standing to the extent their plumbing systems had not leaked and therefore they had not suffered a cognizable injury. *Id.* at 616. For their part, the "dry plaintiffs" pointed to their allegation that the "brass fitting contained a defect upon installation in breach of Minnesota warranty law," to establish Article III standing. *Id.* On appeal, the Eighth Circuit noted that in order "to give rise to a warranty claim[,] a fitting must contain a defect," however, the fitting "need not have already caused external damage." *Id.* at 617. The court of appeals explained that "*O'Neil* never indicated that a child would have to be injured by a crib for a defect to be manifest." *Id.* The Eighth Circuit then reasoned in *Zurn* that the "dry plaintiffs" were different from the "hypothetical 'no injury plaintiffs,' because the dry plaintiffs had alleged that their brass fittings exhibited a defect." *Id.* Specifically, the "dry plaintiffs" had alleged and provided expert evidence that the stress corrosion cracking "afflicts all of the fittings upon use, regardless of water conditions or installation practices," and therefore the "dry plaintiffs" (unlike "no injury" plaintiffs) had Article III standing even though the plumbing systems had not yet leaked. *Id.*

7

In *Polaris*, the Eighth Circuit distinguished that case from *Zurn* to the extent that "unlike the homeowners in [*Zurn*], the purchasers [in *Polaris*] do not allege that any manifest defect is present in their vehicles," but only that "excessive heat *can* cause microscopic degradation in plastic and metal" and in fact "[n]o purchaser has alleged that his vehicle has exhibited any damage or degradation, that replacement parts or additional servicing have been required, or that the vehicles failed to perform as intended." 9 F.4th at 797. Similarly, in *Johannessohn*, the Eighth Circuit distinguished that case from *Zurn* – and holding that the plaintiffs' allegation of an "inherent heat defect common to all Polaris ATVs" was not sufficient without any indication "the heat caused injury" – by recognizing that "[w]hat mattered [in *Zurn*] was that the [brass] fittings developed cracks 'as soon as they [were] exposed to domestic water,'" not the fact that the fittings were made of brass. 9 F.4th at 987. Thus, the Eighth Circuit held in *Johannessohn* that without "an actual injury Polaris owners suffer when they use their vehicles at high temperatures," Article III standing would not lie. *Id.* at 987-88.

The distinction the Eighth Circuit recognized between *Polaris/Johannessohn* and *Zurn* is critical here. While Plaintiff's complaint admittedly presents somewhat of a mixed bag of allegations, Plaintiff does allege that he purchased "one or more" of the Diablo abrasive wheels and that the abrasive wheel(s) he purchased "has a shelf life and expires, and that if the [abrasive wheel] is used after the expiration date it ***will*** give way, crack, split, explode and fail; that he "would not have purchased [the Diablo abrasive wheel] had [he] known that the products, when used as anticipated, crack, split, explode, and fail"; and that when the Diablo abrasive wheels expire or reach their shelf-life they "***would*** crack, split, splinter, warp, explode and otherwise fail[.]" Giving Plaintiff the benefit of all reasonable inferences from these general factual pleadings at this early pleading stage, the Court finds Plaintiff's allegations are closer in kind to those underlying *Zurn* than in *Johannessohn* or *Polaris*.

Specifically, Plaintiff has not just pleaded that the Diablo abrasive wheels are at a risk or merely have a likelihood or propensity to fail (although those allegations are also admittedly included in Plaintiff's complaint). Rather, Plaintiff has set forth factual allegations (even if only generally) that *when* the abrasive wheels reach their expiration date, they *will* fail (i.e., by giving way, cracking, splitting, and exploding) if used after that expiration date. *See Zurn*, 644 F.3d at 617 (noting that "the homeowners do not argue that the [brass] fittings merely 'risk' developing [stress corrosion cracking]," but "[t]hey allege that [stress corrosion cracking] afflicts all of the

8

fittings upon use" and "[a]s they have put it, [stress corrosion cracking] 'is already manifest in all systems'"). Thus, the Court finds Plaintiff has alleged a sufficient particularized and actual injury-in-fact at this juncture to demonstrate Article III standing in the context of this products liability lawsuit. *See also Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 997 ("[a]t the pleading stage . . . a plaintiff must allege sufficient facts to support a reasonable inference that [he] can satisfy the elements of standing") (citation and quotation marks omitted).[6]

## III. Defendant's Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss for failure to state a claim under 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint does not need to include detailed factual allegations, the complaint must allege more than a "sheer possibility that a defendant acted unlawfully" to survive a motion to dismiss. *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (citation and quotation marks omitted omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Packard v. Darveau*, 759 F.3d 897, 899 n.2 (8th Cir. 2014) (citation and quotation marks omitted). However, the Court need not accept as true "pleadings that . . . are no more than conclusions." *Iqbal*, 556 U.S. at 679.

### A. Motion to Dismiss Count One (MMPA claim) for failing to satisfy Rule 9(b)'s heightened pleading requirement

Defendant first argues that the complaint should be dismissed because it does not satisfy the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff argues Rule 9(b) does not apply to his MMPA claim and even if it does, he has adequately pleaded a claim for relief under the MMPA that satisfies that heightened pleading standard.

---

[6] To the extent this case moves forward, of course, Plaintiff must provide sufficient evidentiary proof to support a finding of an Article III injury-in-fact at all future stages of this litigation. *See Lujan*, 504 U.S. at 561.

1.      **Whether Rule 9(b)'s heightened pleading requirement applies to Plaintiff's MMPA claim**

In Count One, Plaintiff claims that Defendant violated the MMPA by failing to include a clear expiration date for the Diablo abrasive wheels it sold, distributed, and advertised. (Doc. 1-1 at 11, ¶ 30.) In relevant part, the MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. State law authorizes a civil action for violation of the MMPA only when "[a]ny person who purchases . . . merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020." Mo. Rev. Stat. § 407.025.1(2). Furthermore, state law provides that a person seeking damages under the MMPA must establish: (1) "the person acted as a reasonable consumer would in light of all circumstances"; (2) "the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages"; and (3) the individual damages or loss suffered are "sufficiently definitive" and "objective evidence . . . allow[s] the loss to be calculated with a reasonable degree of certainty." § 407.025.1(2).[7]

As this Court has recognized, the "plain language of the MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice," and therefore, "causation is a necessary element of an MMPA claim." *Wullschleger v. Royal Canin USA, Inc.*, No. 19-000235-CV-W-GAF, 2022 WL 1164662, at *3 (W.D. Mo. Mar. 22, 2022) (citation and quotation marks omitted). In other words, unless the MMPA violation "cause[d] an ascertainable loss of money or property . . . a plaintiff cannot sue for the violation," even if an MMPA violation has nominally occurred. *Id.* (citation and quotation marks omitted).

Finally, as to MMPA claims based upon a defendant's omission of a material fact (as here), this Court has recognized that under Missouri law such claim includes a scienter element. *Budach v. NIBCO, Inc.*, No. 2:14-cv-04324, 2015 WL 3853298, at *8 (W.D. Mo. June 22, 2015). In other words, an MMPA claim under these circumstances arises only when a defendant "fail[s] to disclose material facts that are known to the defendant, or upon reasonable inquiry would be known to the

---

[7] Section 407.025.5 authorizes a class action under the MMPA.

defendant.'" *Wright v. Bath & Body Works Direct, Inc.*, No. 12-00099-CV-W-DW, 2012 WL 12088132, at *2 (W.D. Mo. Oct. 17, 2012) (quoting *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 84 (Mo. Ct. App. 2011) (cleaned up); *accord White v. Just Born, Inc.*, No. 2:17-cv-04025-C-NKL, 2017 WL 3130333, at *8 (W.D. Mo. July 21, 2017) (a plaintiff asserting an MMPA claim for omission of a material fact "must show the defendant failed to disclose material facts that were 'known to him/her, or upon reasonable inquiry would have been known to him/her'") (cleaned up) (quoting *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009); citing 15 C.S.R. 60-9.110(3)).

Here, Plaintiff alleges that Defendant violated the MMPA as to the sale, distribution, and advertisement of the Diablo abrasive wheels by "fail[ing] to include a clear expiration date." (Doc. 1-1 at 11, ¶ 30; *see id.* at 12, ¶ 36 (alleging that Defendant "intentionally omit[ed] and conceal[ed] material facts about the [wheels'] expiration date").) Plaintiff further alleges that Defendant "knew of the dangerous condition" existing after the Diablo abrasive wheels reach their expiration date but "intentionally omitt[ed] and conceal[ed] material facts about the [wheels'] expiration date." (*Id.* at 12, ¶ 36.) Finally, Plaintiff alleges as a result, he "suffered economic damages in that the product he purchased was worth less than the product he thought he had purchased had Defendant not omitted material facts." (*Id.* at 11, ¶ 31.)

Generally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where the claim sounds in fraud or mistake, however, Rule 9(b) requires that the plaintiff "must state with particularity the circumstances constituting fraud or mistake." In practice, when it applies, Rule 9(b) requires a plaintiff to plead "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003) (requiring the "who, what, where, when, and how" of the alleged violation). When viewed "in the context of the general principle of the Federal Rules, the purpose of which is to simplify pleadings," "[t]he particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to potentially damaging allegations. *United States ex rel. Joshi v. St. Luke's Episcopal-Presbyterian Hosps.*, No. 4:04CV489 RWS, 2005 WL 8176863, at *1 (E.D. Mo. April 13, 2005) (citation omitted); *accord United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (recognizing that the intent

of Rule 9(b)'s heightened pleading standard is "to enable the defendant to respond specifically and quickly to the potentially damaging allegations").

Plaintiff argues that the heightened pleading requirement does not apply to this claim because Rule 9(b) only applies to "fraud-based MMPA claims," not MMPA claims based on a defendant's concealment and omission of a material fact, like Plaintiff's MMPA claim in Count One. (Doc. 17 at 6.) While the Court agrees that Rule 9(b)'s heightened pleading standard generally does not apply to MMPA claims not based on fraud, Plaintiff's MMPA omission/concealment claim is not such a claim. In other words, Plaintiff's MMPA omission/concealment claim is a fraud-based claim to which Rule 9(b)'s heightened pleading requirement applies.

In support of his argument that Rule 9(b) does not apply to the MMPA claim asserted in Count One, Plaintiff relies on *Muhammad v. Public Storage Co.*, No. 14-0246-CV-W-ODS, 2014 WL 3687328 (W.D. Mo. July 24, 2014). In *Muhammad*, the district court found that Rule 9(b) did not apply to an MMPA claim not "sound[ing] in fraud." *Id.* at *3. There, though, rather than a "fraud-based [MMPA] claim," the district court found the MMPA claim plaintiffs asserted was an MMPA claim based on a breach of contract. *Id.* at *4. There, the plaintiffs' MMPA claim arose when the defendant sold items contained in a storage unit after plaintiffs failed to pay the full amount due pursuant to a rental agreement for the storage unit. *Id.* at *1-2. The plaintiffs' MMPA claim alleged that the defendant violated the MMPA regarding "the sale of Plaintiffs' personal items contained in the [storage unit] and Defendant's refusal to give Plaintiffs proper notice of default, and subsequent sale of the personal items." *Id.* at *3. In this way, as the district court found, their MMPA claim was effectively based upon a breach of contract rather than a fraud-type claim: in other words, the plaintiffs' MMPA claim was "essentially, that Defendant committed an unfair trade practice by breaching the contract." *Id.* at *4.

Here, relying on *Muhammad*, Plaintiff argues his MMPA claim "does not sound in fraud." (Doc. 17 at 7.) The Court disagrees. As Plaintiff acknowledges, his MMPA claim centers on Defendant's "concealment and omission" regarding the expiration date or shelf life of the Diablo abrasive wheels. Numerous district courts in Missouri have recognized similar concealment/omission-type MMPA claims as sufficiently "fraud-like" to implicate Rule 9(b)'s heightened pleading requirement. *See Craggs v. Fast Lane Car Wash & Lube, LLC*, 402 F. Supp. 3d 605, 611 (W.D. Mo. Aug. 9, 2019) (finding plaintiff's MMPA claims concerning the actual

services and length of an automatic car wash were "fraud-like" because they were "based on misrepresentations and omissions" to require application of Rule 9(b)); *Elfaridi v. Mercedes-Benz USA, LLC*, No. 4:16 CV 1896 CDP, 2018 WL 4071155, at *4 (E.D. Mo. Aug. 27, 2018) (applying Rule 9(b) to MMPA claim based on defendant's omission regarding defect in vehicle sunroof); *Hays v. Nissan N. Am. Inc.*, 297 F. Supp. 3d 958, 963 (W.D. Mo. Oct. 27, 2017) (applying Rule 9(b) to MMPA claim based on defendant's material omission that vehicle floorboards do not withstand normal exposure to elements, do not drain properly, and are susceptible to rust); *Johnsen v. Honeywell Int'l Inc.*, No. 4:14CV594 RLW, 2016 WL 1242545, at *2 (E.D. Mo. Mar. 29, 2016) (applying Rule 9(b) to MMPA claim based on defendant's false representations and omissions concerning the quality of the humidifiers it sold); *Baryo v. Philip Morris USA, Inc.*, 435 F. Supp. 2d 961, 968 (W.D. Mo. 2006) (applying Rule 9(b) to MMPA claim based on defendant's misrepresentations that cigarettes and nicotine are not addictive; that smoking was healthy, beneficial, and socially desirable; that no scientific or medical evidence linked smoking with cancer or other diseases, among other things); *Owen v. Gen'l Motors Corp.*, No. 06-4067-CV-C-NKL, 2006 WL 2808632, at * (W.D. Mo. Sept. 28, 2006) (applying Rule 9(b) to MMPA claim based on defendant's omission regarding defective windshield wipers in GM vehicles).

While Plaintiff does not allege fraud in the traditional sense, the MMPA claim based on Defendant's alleged concealment or omission of the material facts regarding the expiration of the Diablo abrasive wheels is sufficiently fraud-like (as opposed to having any foundation in breach of contract, for instance) to implicate Rule 9(b)'s heightened pleading requirement. *See also Hennessey v. Kohl's Corp.*, No. 4:19 CV 1866 DDN, 2020 WL 870982, at * (E.D. Mo. Feb. 21, 2020) ("if allegations are grounded in fraud, they are subject to the heightened pleading standard of Rule 9(b)").

### 2. Whether Plaintiff adequately pleads an MMPA claim under Rule 9(b)'s heightened pleading standard

Defendant first argues Plaintiff has not satisfied Rule 9(b)'s heightened pleading standard because he fails to set forth facts with any particularity how Defendant misled him. More specifically, Defendant argues Plaintiff does not plead with any particularity facts regarding Plaintiff's expectation of the shelf life of the Diablo abrasive wheels when he purchased them, that the wheels "expired" before Plaintiff used them, or that Plaintiff used the wheels after their expiration date. (Doc. 10 at 9-10.)

13

The focus of an MMPA claim "is on the defendant's conduct," not the plaintiff's. *White*, 2017 WL 3130333, at *3 (noting MMPA claims fundamentally focus on a "case-by-case determination[] of whether a defendant's conduct violates principles of fair dealing") (citation omitted). In the context of an MMPA claim (which focuses on the defendant's conduct), Rule 9(b) does not require a plaintiff to plead with specificity the facts Defendant identifies above; and even less so in an MMPA claim based on a defendant's alleged concealment or omission of a material fact. The district court explained in *Owen* that Rule 9(b)'s heightened pleading standard requires a plaintiff to plead "'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Owen*, 2006 WL 2808632, at *7 (quoting *Commercial Prop. Invs., Inc. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir. 1995)) (finding Rule 9(b)'s pleading requirement satisfied as to MMPA-omission or concealment claim where "[i]t is clear from the Complaint precisely what information [the plaintiff] allege[s] [the defendant] omitted and/or concealed" and that to otherwise require the plaintiff to plead where and when the omission occurred "would put the [plaintiff] in the untenable position of having to plead a negative"). Here, Plaintiff has pleaded that Defendant concealed or omitted in the labeling, advertisement, and packaging the shelf life of the Diablo abrasive wheels or that the wheels have an expiration date.

In addition, Defendant argues that Plaintiff's reference and reliance on the handbook published by the Health and Safety Executive requiring a three-year use-by or expiration date for abrasive wheels, does not satisfy Rule 9(b)'s pleading standard. As set forth above, Plaintiff alleges the industry standard requires abrasive wheels like the Diablo abrasive wheels to bear a use-by or expiration date.[8] In support, Plaintiff specifically sets forth the Health and Safety

---

[8] This allegation goes to the MMPA's scienter requirement for omission-based claims. *See Freeman v. Toyota Motors Sales, USA, Inc.*, No. 4:19-cv-02550-SEP, 2020 WL 7041810, at *7 (E.D. Mo. Nov. 30, 2020) (a plaintiff asserting an omission/concealment MMPA claim "must allege facts demonstrating [a defendant]'s knowledge with particularity" to plausibly state a claim) (dismissing omission-based MMPA claim because plaintiff "failed to allege with particularity facts supporting a plausible inference that Toyota was aware of the echo defect"); *Hays v. Nissan N. Am., Inc.*, 297 F. Supp. 3d 958, 963 (W.D. Mo. 2017) ("A plaintiff must show the defendant failed to disclose material facts 'known to him or her, or upon reasonable inquiry would [have been] known to him or her.'") (quoting *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009)); *Johnsen*, 2016 WL 1242545, at *3 (holding that to state an MMPA-omission claim the plaintiff must "show Defendant was aware of the alleged defect in the humidifier; when Defendant became aware; and that Defendant purposely omitted this fact in its representations [to plaintiff]").

Executive handbook requiring a three-year use-by or expiration date for abrasive wheels. Defendant argues this is insufficient because Plaintiff does not allege any facts that Defendant knew of the handbook or that the handbook applies in the United States. But whether the handbook accurately reflects the industry standard applicable to the Diablo abrasive wheels is not a relevant inquiry at this early pleading stage. Instead, the Court must accept as true the facts pleaded in Plaintiff's complaint and determine whether those facts are sufficient to state a claim under the applicable federal pleading standard. The inferential leap that Defendant, as a manufacturer, producer, distributor, and seller of bonded abrasive wheels knew or should have known the Diablo abrasive wheels have a shelf-life or expiration date because the prevailing industry standard requires the product to contain an expiration date or use-by date is not so great to find that the federal pleading standard not satisfied. Plaintiff has specifically referenced an industry manual in his complaint. Whether the industry manual as specifically referenced properly states the prevailing industry standard of which Defendant should have been known as a participant of the abrasive wheel industry is an evidentiary issue to be decided at a later stage in this litigation.

Finally, Plaintiff's allegation that he suffered an economic injury in that the "product he purchased was worth less than the product he thought he had purchased" but for the alleged omission of material facts is sufficient to state a claim under the MMPA. Plaintiff alleges that the Diablo abrasive wheels, which do not contain an expiration date or shelf-life date on them, crack, split, explode, and fail if used after having reached their expiration or shelf-life date. Plaintiff has sufficiently alleged an ascertainable loss under the MMPA – which "involves the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction," *White*, 2017 WL 3130333, at *9 (citation and quotation marks omitted) – and that the alleged loss was the result of the packaging which did not contain an expiration or shelf-life date.[9]

---

[9] Defendant construes the fact or evidentiary question of whether the Diablo abrasive wheels actually "expire" after reaching a given shelf-life, including the fact or evidentiary question of whether any Diablo abrasive wheel (including those allegedly bought by Plaintiff) has ever "given way, cracked, split, exploded, or failed because it 'expired'" (Doc. 10 at 11), as implicating Plaintiffs' pleading requirements under Rule 12(b)(6) to sufficiently state a claim under the MMPA. As explained above, however, Plaintiff has adequately pleaded the damage or injury necessary to state a claim under the MMPA, which requires an "ascertainable loss of money or property" under which the "benefit of the bargain" rule applies. *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014). Plaintiff has alleged the product he purchased was worth less than what he thought he had purchased but for Defendant's alleged omission of an expiration date. Rather, in the context of this case and Plaintiff's MMPA claim in Count

In other words, Plaintiff's MMPA claim satisfies the federal pleading standard under Rules 8 and 9(b) to the extent Plaintiff alleges Defendant violated the MMPA by its alleged omission or concealment of the material fact that the Diablo bonded abrasive wheels had a shelf-life or expiration date. Plaintiff has provided a sufficient particularized factual basis to plausibly allege a claim that Defendant knew or should have known the Diablo abrasive wheels had a shelf life to the extent the prevailing industry standard (as alleged by Plaintiff) requires a clear expiration date to be placed on the Diablo abrasive wheels.

Therefore, Defendant's motion to dismiss Count One for failure to state a claim is **DENIED**.

### B.    Motion to Dismiss Counts Two, Three, Four, and Five (Unjust Enrichment, Strict Liability and Negligence claims) under the economic loss doctrine

Next, Defendant argues that pursuant to Missouri's "economic loss doctrine," Plaintiff fails to state a claim as to Counts Two, Three, Four, and Five (Plaintiff's common law claims for unjust enrichment, strict liability, and negligence). In each of Plaintiffs' common law claims for unjust enrichment, strict liability, and negligence, Plaintiff only alleges damage to the product itself. Plaintiff does not allege personal injury or damage to other property and only alleges economic loss or damage to the product sold, In other words, the only loss sustained by Plaintiff as alleged in his complaint is a purely economic loss.

In Missouri, "remedies for economic loss sustained by reason of damage to or defects in products sold are limited to those under the warranty provisions of the UCC." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130-31 (Mo. banc 2010) (citation omitted). Said another way, under Missouri law, the so-called "economic loss doctrine" "bars recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty." *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010) (citation and quotation marks omitted). Defendant argues Plaintiff's common law claims for strict liability, negligence, and unjust enrichment are barred by the economic loss doctrine because each of Plaintiffs' common law claims only allege damage to the product itself. In opposition, Plaintiff argues that the economic loss doctrine "applies only to commercial contract cases where no duty exists independent of the contract itself." (Doc. 17 at 14.) In other words, Plaintiff argues the economic

One, the issue Defendant raises fundamentally goes to the issue of whether Plaintiff can sufficiently demonstrate a constitutional injury-in-fact to establish Article III standing as this case moves forward.

16

loss doctrine does not apply here because (1) Plaintiff (and putative class members) are consumers, not commercial parties, and (2) Defendant "owes Plaintiff and other class members non-contractual duties." The Court does not find Plaintiff's arguments persuasive.

Neither does the Court find persuasive Plaintiff's argument that economic loss doctrine only applies to commercial transactions with commercial parties (as opposed to ordinary consumers). It does not appear the Missouri Supreme Court has specifically addressed whether the economic loss doctrine applies only to commercial-purchasers or commercial transactions. The Court's role here, then, is to determine how the Missouri Supreme Court would likely rule. *See AKA Distributing*, 137 F.3d at 1086.

For his part, Plaintiff does not refer to any Missouri state caselaw in support of this argument. Instead, Plaintiff points to *Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965 (W.D. Mo. 2021). In that case, the district court held that plaintiffs' fraud claims were not barred by Missouri's economic loss doctrine "[b]ecause Plaintiffs are consumers alleging fraud." *Id.* at 974. In doing so, the district court relied on *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902 (8th Cir. 2013), stating: "[Missouri's] economic loss doctrine prohibits a commercial buyer of goods 'from seeking to recover in tort for economic losses that are contractual in nature.'" *Id.* at 908 (quoting *Autry Morlan*, 332 S.W.3d at 192).[10] In *Dannix*, however, the Eighth Circuit did not have occasion to address the question posed by Plaintiff here, because the plaintiff-purchaser was a commercial party as opposed to an ordinary consumer.[11] Indeed, it does not appear the Eighth Circuit has specifically addressed this issue under Missouri law, either.

---

[10] Nothing in *Autry Morlan* itself appears to suggest any inkling of the consumer-commercial distinction Plaintiff proposes exists as to Missouri's economic loss doctrine. In that case, the Missouri Court of Appeals recognized the economic loss doctrine in this state as "prohibit[ing] a plaintiff from seeking to recover in tort for economic losses that are contractual in nature," or in other words limiting recovery in tort for pure economic damages "only . . . where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." 332 S.W.3d at 192 (collecting cases). Moreover, like *Dannix* as explained above, *Autry Morlan* involved commercial parties (i.e., an automobile dealership and a floor-plan financing provider (and its employee) and insurance broker), and thus did not have occasion to consider whether the economic loss doctrine in Missouri applies to consumer-purchasers and commercial-purchasers alike.

[11] Additionally, in *Dannix*, the Eighth Circuit cited a Seventh Circuit decision that recognized: "'[T]he "economic loss" doctrine . . . forbids commercial contracting parties (as distinct from consumers, and other individuals not engaged in business) to escalate their contract dispute into a charge of tortious misrepresentation if they could easily have protected themselves from the misrepresentation of which they now complaint.'" 732 F.3d at 9088 (quoting *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 865-66 (7th Cir. 1999)) (alterations in original). In making this observation in *Amway*, the Seventh Circuit referred to an earlier Eighth Circuit decision, *AKA Distributing Co. v. Whirlpool Corp.*, 137 F.3d 1083 (8th Cir.

Because the Missouri Supreme Court has not addressed whether the economic loss doctrine applies only to claims by a commercial-purchaser, the Court must determine how the Missouri Supreme Court would likely rule on the issue. *See AKA Distributing*, 137 F.3d at 1086.

In *Autry Morlan*, the Missouri Court of Appeals traced the "roots of the economic loss doctrine" in Missouri to *Crowder v. Vandendeale*, 564 S.W.2d 897 (Mo. banc 1987). Rather than having a foundation in any commercial context, *Crowder* itself involved an individual's private purchase of a home from the original purchaser and the new owner's subsequent action against the contractor who built the home. *Id.* at 192 (referring to *Crowder*). Missouri courts have not delineated a commercial-consumer distinction in the economic loss doctrine, and have applied the economic loss doctrine without regard to whether the plaintiff-purchaser was a "consumer" or a "commercial" party. *See, e.g.*, *Acol v. Travers Autoplex & RV, Inc.*, 637 S.W.3d 415, 421-22 (Mo. Ct. App. 2021) (no plain error in jury instruction for economic loss doctrine in lawsuit following consumer's purchase of an RV); *Sharp Bros. Contracting v. Am. Hoist & Derrick Co.*, 714 S.W.2d 919, 920 (Mo. Ct. App. 1986) (negligence claim following individual's purchase of a crane (and later leasing it to a construction company) barred by economic loss doctrine). Indeed, in *Sharp*, the Missouri Supreme Court framed the issue before the Court as: "whether . . . recovery may be had *by consumers* for damages to the product sold" (with of course, the state supreme court ultimately concluding that recovery under strict liability for tort would not be allowed where the only damage was to the product sold). 703 S.W.2d at 903 (emphasis added).

And in this same way, federal courts applying Missouri's economic-loss doctrine have similarly done so where the plaintiff-purchaser was a "consumer" rather than a "commercial" party. *Johnsen*, 2015 WL 631361, at *7-8 (plaintiff-homeowner's negligence claim following purchase of humidifier for his home barred by economic loss doctrine); *Budach*, 2015 WL 3853298, at *1 & *6 (plaintiff-homeowner's negligence claim following purchase of plumbing system for use in his home barred by economic loss doctrine); *Pollard v. Remington Arms Co., LLC*, No. 13-0086-CV-W-ODS, 2013 WL 3039797 (W.D. Mo. June 17, 2013) (plaintiff-consumer's strict liability and negligence claim following purchase of Remington rifle barred by

---

1998), as supporting this proposition. *All-Tech Telecom*, 174 F.3d at 866 (other citations omitted). Rather than Missouri law, however, *AKA Distributing* involved application of the economic loss doctrine under Minnesota law and, moreover, like *Dannix* (and *Autry Morlan*), *AKA Distributing* ultimately involved a commercial (rather than consumer) purchaser.

18

economic loss doctrine); *but see Browning*, 539 F. Supp. 3d 965, 973-74 (W.D. Mo. May 13, 2021).[12]

### 1. Unjust Enrichment (Count Two)

Defendant argues that the economic loss doctrine bars Plaintiff's unjust enrichment claim. As the Eighth Circuit has recognized, "Missouri law . . . expressly limits th[e] doctrine to warranty and negligence or strict liability claims." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 774 (8th Cir. 2020) (citing *Renaissance Leasing*, 322 S.W.3d at 130-31; *Sharp*, 703 S.W.2d at 903). In *Renaissance Leasing*, as set forth above, the Missouri Supreme Court recognized that "[u]nder Missouri law, remedies for economic loss sustained by reason of damage to or defects in products sold are limited to those under the warranty provisions of the UCC." 322 S.W.3d at 130. In *Vogt*, the Eighth Circuit recognized the "traditional moorings" of the economic loss doctrine under Missouri law "as policing the boundaries between warranty and negligence." 963 F.3d at 774 (record citation and quotation marks omitted).

Here, Plaintiff's unjust enrichment claim rests on the theory that he "would not have purchased [the Diablo abrasive wheels] had [he] known that the products, when used as anticipated, crack, split, explode and fail." (Doc. 1-1 at 12.) The only loss sustained by Plaintiff as alleged in his complaint is a purely economic loss fundamentally based on an alleged defect in the product   The economic loss doctrine bars this unjust enrichment claim. *See Flynn v. CTB, Inc.*, No. 1:12-CV-68 SNLJ, 2013 WL 28244 (E.D. Mo. Jan. 2, 2013) (finding plaintiff's unjust enrichment claim barred by economic loss doctrine; relying on *Renaissance Leasing*); *cf. Steadfast Ins. Co. v. ARC Steel, LLC*, No. 16-3214-CV-S-SRB, 2019 WL 2090696, at *3 (W.D. Mo. May 13, 2019) (holding economic loss doctrine does not bar negligence claim that was "based on the alleged manner in which Defendant installed the steel and the damage this caused, not any

---

[12] That Missouri's economic loss doctrine does not include a commercial-consumer distinction is also consistent with the economic loss doctrine's foundation in the Uniform Commercial Code ("UCC"). *See Heartland Med., LLC v. Express Scripts, Inc.*, No. 4:17-CV-02873 JAR, 2018 WL 4216669, at *2 (E.D. Mo. Sept. 5, 2018) (recognizing "the economic loss doctrine [in Missouri] originated in cases arising under the Uniform Commercial Code") (collecting cases). The UCC, as adopted by Missouri, does not include the "commercial-consumer" distinction advocated by Plaintiff here. *See* Mo. Rev. Stat. § 400.1-201(b)(9), (11), (30) (defining "buyer in the ordinary course of business," "consumer," and "purchaser" without necessarily limiting the terms to a commercial context); Mo. Rev. Stat. § 400.2-103(1)(a) (defining "buyer" as "a person who buys or contracts to buy goods"); Mo. Rev. Stat. § 400.2-105(1) (defining "goods" as "all things . . . which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid").

19

defective condition of the steel itself"). Accordingly, Plaintiff's claim for unjust enrichment on this theory is barred by the economic loss doctrine.

## 2. Strict Liability and Negligence (Counts Three, Four, and Five)

Defendant also argues that the economic loss doctrine bars Plaintiff's strict liability and negligence claims. It is well-established that Missouri's economic loss doctrine "bars recovery for negligence and strict liability 'where the only damage is to the product sold.'" *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 906 (8th Cir. 2013) (quoting *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. banc 1986)) (other citations and quotation marks omitted); *accord Budach*, 2015 WL 3853298, at *6 (recognizing that the economic loss doctrine "precludes a claim of product liability or negligence with respect to damages to the product itself") (collecting Missouri cases) (holding plaintiff's negligence claim barred by the economic loss doctrine "to the extent he seeks to recover the cost of repairing or replacing the" allegedly defective products).[13] The only loss sustained by Plaintiff as alleged in his complaint is a purely economic loss. Accordingly, Plaintiff's claims for strict liability and negligence are also barred by the economic loss doctrine.

Finally, as to Plaintiff's argument that the economic loss doctrine does not apply because Defendant "owes Plaintiff and other class members non-contractual duties," the Court emphasizes that as a matter of law, because Plaintiff does not allege personal injury or damage to other property and only alleges economic loss or damage to the product sold, the economic loss doctrine applies, and this argument is without merit. *See Johnsen*, 2015 WL 631361, at *8 (rejecting plaintiff's argument that his claims "arise from common law and not from the contract" to argue the economic loss doctrine does not apply). Each of Plaintiff's common law claims for unjust enrichment, strict liability, and negligence, only allege damage to the product itself and are thus barred by the economic loss doctrine. Therefore, Defendant's motion to dismiss Counts Two, Three, Four, and Five is **GRANTED**.

---

[13] Missouri courts have recognized several exceptions to the economic loss doctrine, although neither party argues those exceptions apply here. *See BOKF, N.A. v. BCP Land Co., LLC*, No. 6:14-cv-03025-MDH, 2016 WL 951636, at *10 (W.D. Mo. Mar. 9, 2016) (exceptions to economic loss doctrine).

## IV.  Conclusion

Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim is **GRANTED in part** and **DENIED in part** as follows:

(1) Defendant's motion to dismiss Count One is **DENIED**; and

(2) Defendant's motion to dismiss Counts Two, Three, Four, and Five is **GRANTED**, and these counts are **DISMISSED** as barred by the economic loss doctrine.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  September 30, 2022

21