# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

| | | | |
|---|---|---|---|
| JEFFREY TUTER, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 4:22-cv-282-RK |
| | ) | | |
| FREUD AMERICA, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARD, AND SUGGESTIONS IN SUPPORT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

I.   INTRODUCTION ......................................................................................... 1

II.  BACKGROUND ............................................................................................ 2

   A. Pre-Litigation Work and The Litigation ................................................ 2

   B. Settlement Negotiations and Mediation ................................................ 3

   C. The Terms of the Settlement ................................................................. 4

       1. The Settlement Class ........................................................................ 4

       2. Monetary and injunctive relief ........................................................ 4

       3. Release of claims .............................................................................. 6

       4. Attorneys' fees and expenses and Service Awards ........................ 7

   D. Preliminary Approval ............................................................................. 8

   E. Notice and Settlement Administration ................................................. 8

III. LAW AND ARGUMENT ............................................................................ 10

   A. The Court Should Finally Certify the Settlement Class ..................... 10

   B. The Court Should Grant Final Approval of the Settlement ............... 10

       1. Legal standard for final approval .................................................. 10

       2. The Settlement is fair, reasonable, and adequate under the Rule 23(e) factors ........................................................................................ 11

       a. The Settlement Class Representatives and Settlement Class Counsel have adequately represented the Settlement Class ............................... 11

       b. The Settlement was negotiated at arm's length ....................................... 13

       c. The relief provided for the Settlement Class is more than adequate ... 14

       d. The Agreement treats Settlement Class members equitably relative to each other .................................................................................................. 19

       3. The Agreement is also fair, reasonable, and adequate under the Eighth Circuit's additional *Van Horn* factors .................................................... 21

       a. Defendant's financial condition .................................................................. 21

       b. The amount of opposition to the Settlement .............................................. 22

   C. Notice Provided to the Settlement Class Satisfied Due Process ......... 22

IV. CONCLUSION ............................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................ 15

*Barfield v. Sho-Me Power Elec. Co-op.,*
  No. 11-CV-04321-NKL, 2013 WL 3872181 (W.D. Mo. July 25, 2013).................. 22

*Cohn v. Nelson,*
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ....................................... 10

*Evans & Green, LLP v. That's Great News, LLC,*
  No. 11-3340-CV-S-ODS, 2012 WL 4888471 (W.D. Mo. Oct. 15, 2012) ................ 23

*Fath v. Am. Honda Motor Co.,*
  No. 18-CV-1549 (NEB/LIB), 2019 WL 6799796 (D. Minn. Dec. 13, 2019) ...... 12, 13

*Gilbert v. First Alert, Inc.,*
  904 F. Supp. 714 (N.D. Ill. 1995) ............................................ 12

*Guttmann v. Ole Mexican Foods, Inc.,*
  No. 14-CV-04845-HSG, 2016 WL 9107426 (N.D. Cal. Aug. 1, 2016) .................. 15

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ........................................................ 19

*Hopkins v. Kansas Tchrs. Cmty. Credit Union,*
  265 F.R.D. 483 (W.D. Mo. 2010) ............................................ 12

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.,*
  No. 08-0309, 2011 WL 1790603 (W.D. Mo. May 10, 2011) ................... 13, 16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995).................................................. 10

*In re Pre-Filled Propane Tank Antitrust Litig.,*
  No. 14-02567-MD-W-GAF, 2016 WL 6963058 (W.D. Mo. Sept. 2, 2016) ............. 16

*In re Target Corp. Customer Data Sec. Breach Litig.,*
  892 F.3d 968 (8th Cir. 2018) .............................................. 22

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.,*
  716 F.3d 1057 (8th Cir. 2013) ............................................. 21

ii

*Kautsch v. Premier Commc'ns*,
  No. 06-CV-04035-NKL, 2008 WL 11426766 (W.D. Mo. Nov. 20, 2008) ................ 22

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ....................................................... 14, 16, 22

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No.*,
  *1*, 921 F.2d 1371 (8th Cir. 1990) ............................................... 10

*Marshall v. Nat'l Football League*,
  787 F.3d 502 (8th Cir. 2015) ..................................................... 20, 22

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) .................................................. 10

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................ 22

*Pollard v. Remington Arms Co., LLC*,
  320 F.R.D. 198 (W.D. Mo. 2017) ............................................ 22

*Swinton v. SquareTrade, Inc.*,
  454 F. Supp. 3d 848 (S.D. Iowa 2020) ................................ 12, 13, 16, 20

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988) ................................................. 21, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................... 16

*Yarrington v. Solvay Pharms., Inc.*,
  697 F. Supp. 2d 1057 (D. Minn. 2010) .................................. 17

## <u>Rules</u>

FED. R. CIV. P. 23(b) ................................................................... 16

FED. R. CIV. P. 23(e) ....................................... 11, 12, 13, 14, 16, 19, 20, 21

Fed. R. Civ. P. 30(b)(6).............................................................. 3

iii

## I.  INTRODUCTION

After multiple rounds of briefing and extensive arm's-length negotiations, the Parties[1] negotiated a settlement with the aid of mediator Scott Hecht of the Stinson Firm. *See* Doc. 53-1 at 7-34, (the "Agreement"). This Court previously granted preliminary approval of the settlement (Doc. 54) and Plaintiff has moved for attorneys' fees and costs. Doc. 57. Notice has been carried out, and the claims period has concluded. The Settlement Class has unanimously approved the settlement. At the time of this filing, no objections and no opt-outs were submitted. *See* Declaration of Jessica Jenkins ("Jenkins Decl.") at ¶¶ 13-14, attached hereto as Exhibit 1. Plaintiff now moves for final approval of the settlement.

The Agreement provides significant monetary and injunctive relief to a nationwide class of purchasers of Diablo-branded bonded abrasive wheels (the "Covered Products"). Defendant agreed to: (1) make modifications to the labeling or marketing of the Covered Products to provide a warning to improve the awareness and meaning of the date on the Covered Products; (2) provide a warning on its website to improve the awareness and meaning of the date on the Covered Products; and (3) provide up to a maximum of $1,900,000, inclusive of cash payments to Settlement Class members, claims administration costs, a service award to Plaintiff, and attorneys' fees and expenses. The injunctive relief is valued at over $180 million,

---

[1] All capitalized words and terms contained herein shall have the meaning assigned to them in the settlement Agreement, unless otherwise noted or defined here. Doc. 53-1.

according to Shawn D. Fox, a forensic accountant, retained by Settlement Class Counsel. *See* Doc. 58-2.

As explained below, the terms of the proposed Agreement are more than fair, reasonable, and adequate. Indeed, the Agreement provides numerous benefits (monetary and non-monetary) that would not have been achieved even if Plaintiff were to prevail at trial. Accordingly, Plaintiff requests entry of an order granting final approval of the class action settlement, finally certifying the Settlement Class, and finding the Notice Program satisfied due process.

## II.    BACKGROUND

### A.    Pre-Litigation Work and The Litigation

A detailed history of the pre-litigation work and litigation was set forth in Plaintiff's Motion for Preliminary Approval (Doc. 53) and the Declaration of Paul D. Anderson ("Anderson Decl.") in support of that motion (Doc. 53-1.) In short, this case arose from an abrasive wheel failure and ultimately the successful completion of a similar class action against a separate abrasive wheel supplier, Stanley Black & Decker. *See Dinges v. Black & Decker (U.S.), Inc.* (16th Circuit Court, Jackson County, Missouri, Case No. 2116-cv-12037). Following this litigation, Plaintiff's counsel learned that other suppliers, including Defendant, were engaging in the same allegedly deceptive practices and selling abrasive wheels that lacked a clear warning about the date provided by the manufacturers of the wheels.

As a result, on March 9, 2022, Plaintiff commenced this consumer protection class action in the Sixteenth Circuit Court of Jackson County, Missouri. On April 29, 2022, Defendant removed this action to this Court (Doc. 1). Thereafter, the parties

2

engaged in extensive briefing relating to Defendant's Motion to Dismiss, and the Court's request relating to Article III standing. *See e.g.*, Doc. 9, 17, 33, 35-36.

### B. Settlement Negotiations and Mediation

In accordance with the Mediation Assessment Program ("MAP"), the parties selected Scott Hecht as the mediator and conducted their first mediation session on August 17, 2022 Doc. 25. In preparation for this mediation, Plaintiff conducted written discovery relating to Defendant's sales, annual revenue, and the scope of the putative class. Similarly, Defendant propounded discovery on Plaintiff relating to his purchase and use of the products.

The August 17, 2022, mediation occurred and although productive, the parties were unable to reach a settlement. The parties continued to conduct discovery, and Plaintiff served a Fed. R. Civ. P. 30(b)(6) Notice to conduct a comprehensive corporate representative deposition relating to, *inter alia*, the putative class and Defendant's sales, labeling, and manufacturing practices.

The parties also determined that another mediation session would be beneficial. As a result, on November 3, 2022, the parties conducted a second mediation with Scott Hecht. The mediation was productive and substantive terms were negotiated, but no settlement was reached. The parties proceeded with discovery and the scheduling of depositions, while at the same time, continued to engage in meaningful negotiations over the coming months.

Ultimately, after extensive arms'-length negotiations, the parties were able to reach a settlement in principle on January 12, 2023. After additional negotiations,

3

the parties entered into a term sheet on February 16, 2023. Over the course of the next two months, the parties began the work of drafting and negotiating a comprehensive settlement agreement until it was fully executed on April 20, 2023.

### C.    The Terms of the Settlement

#### 1.    The Settlement Class

The Agreement provides for the following Settlement Class:

> [A]ll Persons who purchased one or more Covered Products at retail in the United States and its territories during the Class Period. Excluded from the Settlement Class are: (i) Defendant and its employees; (ii) any Person who properly and timely opts out pursuant to this Agreement; (iii) federal, state, and local governments (including all agencies and subdivisions thereof (but employees thereof are not excluded); and (iv) any judge who presides over the consideration of whether to approve the settlement of this class action and any member of their immediate family.

Doc. 53-1 at § 2.28.

The Class Period is from January 1, 2017, through September 6, 2023. *Id*. at § 2.6.

#### 2.    Monetary and injunctive relief

The Agreement provides Settlement Class members with significant monetary and non-monetary benefits.  With respect to the monetary benefits, Defendant will pay up to $1,075,000 to Settlement Class Members in accordance with the following terms:

> a.  Tier 1 – Claimants Without Proof of Purchase.  Claimants who do not submit proof of purchase may receive payment of up to $2.50 per unit for up to four units.  The maximum benefit amount under Tier 1 is $10 per household.
>
> b.  Tier 2 – Claimants with Proof of Purchase.  Claimants who submit proof of purchase for one or more Covered Products may receive

4

reimbursement of the amount of such purchases subject to a maximum Benefit Amount of $50 (regardless of whether the total amount of such purchases exceeded $50).

    c. If the amount of approved claims under Tier 1 and Tier 2 combined exceed $1,075,000, the Benefit Amounts paid to each approved claimant will be reduced *pro rata*

*Id.* at § 3.6.

The Agreement also provides Settlement Class members with significant injunctive relief. Defendant is also obligated to implement numerous changed business practices in the form of injunctive relief that will protect class members, future consumers, and the public. While not recognized in a dollar amount, the changed business practices Defendant is obligated to undertake has substantial monetary and safety value. *Id.* at § 4.

Specifically, Defendant will be required to make changes to the labeling or marketing of the Covered Products to improve consumers' awareness of the meaning of the date on the Covered Products in the future. *Id.* at § 4.1. Additionally, Defendant will be required to explain on its website the meaning of the date on the Covered Products. *Id.* at § 4.2.

To that end, Defendant created the following safety guide, attached hereto as Exhibit 2, which states in pertinent part:

- Do not use after the marked expiration EXP or V date.

- Expiration Date for Bonded Wheels

    o The bond material of bonded abrasive wheels may degrade with time when exposed to adverse environmental conditions. To reduce the likelihood of injury or property damage, the bonded

5

> abrasive wheels should not be used past the expiration date
> marked on the wheel. The expiration date is typically marked
> near the arbor hole with EXP or V and is followed by a month and
> year (MM/YYYY). The expiration date ("EXP" or "V") is the last
> date of the calendar month the wheel should be used.

*See also* https://www.diablotools.com/public/assets/diablo/downloadables/diablotools-bonded-safety-guide-2024.pdf (last accessed on November 30, 2023).

These business practice changes, although not reduced to a dollar figure, have substantial value because they will lead to*, inter alia*, more clarity on the products in the market and will help to prevent consumer injuries. These are all changes that may not have been achievable absent a settlement.

In addition, separate and apart from the above benefits, the Agreement provides that Defendant will pay the costs of notice and administration of the settlement. *See* Doc. 53-1 at § 12; *see also* Ex. 1 at ¶ 17 (cost of administration is $300,000). These costs will not impact the relief afforded to the Settlement Class.

### 3. Release of claims

The class-wide release is tailored to the allegations in this Action. Upon the Final Effective Date, Settlement Class members who did not submit a valid and timely Opt Out release the following claims against the Released Parties:

> [a]ny claim, liability, right, demand, suit, matter, obligation, lien,
> damage, punitive damage, exemplary damage, penalty, loss, cost,
> expense, debt, action, or cause of action, of every kind and/or
> nature whatsoever whether now known or unknown, suspected or
> unsuspected, asserted or unasserted, latent or patent, which any
> Releasing Party now has, or at any time ever had, regardless of
> legal theory or type or amount of relief or damages claimed,

which: (i) in any way arises out of, is based on, or relates in any way to representations or omissions pertaining to the expiration, shelf-life, or other date on or regarding the Covered Products, including how the date is determined, its length, and what it means; or (ii) is asserted in the Complaint filed in this Action. However, Released Claims shall not include any claims for personal injury.

Doc. 53-1 at § 2.24.

### 4.    Attorneys' fees and expenses and Service Award

The Agreement provides that Settlement Class Counsel will apply for an award of attorneys' fees and expenses resulting from the litigation in an amount not to exceed $520,000, and Defendant agreed not to object to Settlement Class Counsel's request. *Id*. at § 5.1. In addition, the Agreement permits Settlement Class Counsel to seek a service award to Settlement Class Representative in the amount of $5,000. *Id*. at § 5.2. Defendant agreed not to object to this request, as well. *Id*. The award of attorneys' fees and costs, and service award will be paid out of the $1,900,000 Settlement Fund. *Id*. at § 12.4.

Pursuant to the schedule set forth in the Preliminary Approval Order, on November 6, 2023, Plaintiff filed his Application for Attorneys' Fees, Costs, Litigation Expenses, and Class Representative Service Award. Doc. 57-58. Therein, Plaintiff seeks an award of attorneys' fees and expenses of $520,000. *Id*. Specifically, Plaintiff seeks $492,650.75 in attorneys' fees, representing less than .03% of the benefits provided by the settlement, Doc. 58 at p. 5-8, and reimbursement of $27,349.25 in properly documented costs and litigation expenses. *Id*. at 15. Finally, Plaintiff requested a service award of $5,000 to the Settlement Class Representatives *Id*. at 15-16. Plaintiff's Application will be considered by the Court at the Final Approval

Hearing, separate and apart from the fairness, reasonableness, and adequacy of the Agreement.

### D. Preliminary Approval

This Court granted preliminary approval of the proposed settlement on September 6, 2023. Doc. 54. The Court preliminarily found that the Agreement was reached after arm's length negotiations between experienced counsel through mediations conducted by an experienced mediator. *Id.* at 1. The Court further approved the form and content of the Notice Program and notice forms and found that the Notice Program met the requirements of Rule 23 and due process and provided the best notice practicable under the circumstances. *Id.* at 5-6. In addition, the Court appointed Simpluris as the Settlement Administrator, approved the Claim Forms, established Claim Form, Opt-Out and Objection deadlines, and directed the Settlement Administrator to implement the Notice Program. *Id.* at 5-9.

### E. Notice and Settlement Administration

The Agreement includes a comprehensive Notice Program paid for by Defendant, separate and apart from other benefits provided to Settlement Class members. Doc. 53-1 at § 12.1. Pursuant to the Notice Program, the Settlement Administrator disseminated direct e-mail notice to potential Settlement Class members. Ex. 1 at ¶¶ 4-7. In addition, the Settlement Administrator implemented the digital notice as set forth in the Notice Program, which included targeted ads on websites and social media platforms and keyword search targeting. *Id.* at ¶¶ 8-9. In total, the advertisements delivered 6,336,168 gross impressions. *Id.*

8

The Settlement Administrator established and administered the settlement website (https://www.bondedabrasivediscsettlement.com/) which contains copies of the Agreement, the Long Form Class Notice, the Claim Forms, and other relevant documents available for review and download, provides relevant dates and deadlines, provides answers to frequently asked questions, and allowed Settlement Class members to complete Claim Forms online directly through the website. Ex. 1 at ¶ 21. The internet ad campaign, described above, resulted in 24,189 clicks through to the settlement website. *Id.* at ¶ 9.

The Settlement Administrator also established a toll-free telephone number available 24 hours a day, 7 days a week, to provide additional information about the settlement. *Id.* at ¶ 22.

November 20, 2023, was the deadline for Settlement Class members to submit a Claim Form, request exclusion from the Settlement Class, or file an objection to the Settlement. Doc. 54 at 9. As of this filing, the Settlement Administrator has received zero requests for exclusion and no objections to the Settlement. Ex. 1 at ¶ 14.

As of November 29, 2023, the Settlement Administrator has received a total of 126,413 Claim Forms. Ex. 1 at ¶ 15. Of these, 126,269 Claim Forms were submitted online and 144 Claims Forms were submitted by mail. *Id.* Pursuant to the Agreement, the Settlement Administrator is currently conducting an analysis to ensure the validity of claims. Doc. 53-1 at § 3.5. The Claims Administrator and Settlement Class Counsel will provide the final number of valid claims and a specific breakdown of Tier 1 versus Tier 2 benefits prior to the Final Approval Hearing. *Id.* at §§ 3.6-3.7.

## III.    LAW AND ARGUMENT

### A.    The Court Should Finally Certify the Settlement Class

In its September 6, 2023, Preliminary Approval Order, the Court conditionally certified the Settlement Class, and found that the settlement is fair, reasonable, and adequate. Doc. 54 at 1-2. Nothing has changed since the Court's Preliminary Approval Order, and no objections have been received relating to the propriety of the Court's certification of the Settlement Class. *See infra*, Part III(B)(3)(b). Thus, upon final approval, the Court should finally certify the Settlement Class.

### B.    The Court Should Grant Final Approval of the Settlement

#### 1.    Legal standard for final approval

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor").  This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Since amended in December 2018, Rule 23(e) has advised courts determining whether a class action settlement proposal is "fair, reasonable, and adequate" to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i)   the costs, risks, and delay of trial and appeal;

   (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

"The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e) advisory committee note to 2018 amendment.

As discussed below, these factors all support a finding that the Agreement is fair, reasonable, and adequate.

### 2. The Settlement is fair, reasonable, and adequate under the Rule 23(e) factors

#### a. The Settlement Class Representatives and Settlement Class Counsel have adequately represented the Settlement Class

The Court must first determine whether the Settlement Class Representatives and Settlement Class Counsel have adequately represented the Settlement Class.

11

Fed. R. Civ. P. 23(e)(2)(A). Here, as this Court has previously found, both the Settlement Class Representatives and Settlement Class Counsel have done just that. Doc. 54 at 1.

With respect to the Class Representative, courts look to a number of factors, such as their contributions and participation to the litigation and potential conflicts of interest. *See, e.g., Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 882 (S.D. Iowa 2020) (noting class representatives' provision of information and consultations with counsel); *Fath v. Am. Honda Motor Co.*, No. 18-CV-1549 (NEB/LIB), 2019 WL 6799796, at *2 (D. Minn. Dec. 13, 2019) (noting no conflicts of interest).

Here, Settlement Class Representative invested significant time in the litigation by working with Settlement Class Counsel to facilitate the investigation, litigation, and resolution of this matter. Doc. 58-1, Anderson Decl. at ¶ 6. Mr. Tuter reviewed various draft and final pleadings, provided Settlement Class Counsel with pertinent information, responded to written discovery, and provided responsive documents. Mr. Tuter also received and reviewed the Agreement to understand its terms and benefits to the Settlement Class and discussed same with Class Counsel. Settlement Class Representative has been actively engaged in litigation and the settlement process. *Id*.

Further, the interests of the Settlement Class Representative "coincide with those of the rest of the class." *See Hopkins v. Kansas Tchrs. Cmty. Credit Union*, 265 F.R.D. 483, 487 (W.D. Mo. 2010) (citing *Gilbert v. First Alert, Inc.*, 904 F. Supp. 714, 719 (N.D. Ill. 1995)). All Settlement Class members suffered the same damages in

12

that they purchased the Covered Product without knowledge they expired and did not receive the full benefit of the bargain. The Class Representative has more than adequately represented the Settlement Class.

Settlement Class Counsel have also adequately represented the Settlement Class. Settlement Class Counsel have achieved an excellent result, despite the risks underlying the litigation. The Agreement was brokered after more than a year of litigation and intense negotiations by counsel well versed in consumer class actions. Doc. 54 at p. 4. This factor weighs in favor of final approval.

### b. The Settlement was negotiated at arm's length

Next, the Court considers whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In assessing this factor, courts often look to the settlement experience of counsel, whether plaintiffs prevailed on a contested motion for class certification, the nature of the settlement proceedings, and whether fees were negotiated after the substantive settlement terms. *See, e.g., Fath*, 2019 WL 6799796, at *2 (arm's length negotiation where counsel experienced in class actions and experienced mediator involved); *Swinton*, 454 F. Supp. 3d at 876 (post-settlement discussion of fees indicating arm's length negotiation); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, No. 08-0309, 2011 WL 1790603, at *3 (W.D. Mo. May 10, 2011) (citing length of settlement discussions and supervision of capable mediator).

This Court previously found that "the settlement was negotiated by experienced counsel at arm's length including through mediation conducted by an experienced mediator[.]" Doc. 54 at 1.

13

As noted above, Settlement Class Counsel are well qualified in the prosecution and settlement of consumer class actions. Further, mediation and settlement were guided by an experienced mediator. The complexity and length of the settlement negotiations—which spanned multiple months—further evidence the arm's length nature of the settlement. Doc. 58-1 at ¶¶ 6-10. Finally, the Parties did not discuss the issue of fees until after the substantive portions of the Agreement affecting Settlement Class members were decided. *Id.* at ¶ 11. The arm's length requirement has been satisfied.

### c. The relief provided for the Settlement Class is more than adequate

The Court also considers whether "the relief provided for the class is adequate[,]" taking various factors into account. Fed. R. Civ. P. 23(e)(2)(B).

The Agreement provides significant relief to Settlement Class members in the form of both injunctive relief and fair compensation. *See supra*, Part II(C)2. Further, the benefits provided by the Agreement exceed that which Plaintiff could have obtained had he prevailed at trial.

First, the *nationwide* Settlement Class is a significant expansion of what likely would have been only a Missouri class, seeking relief under the MMPA. The Eighth Circuit has noted that a nationwide settlement for a case where nationwide relief would not otherwise be possible strongly weighs in favor of approving the settlement. *See Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017) ("although the district court certified the class for purposes of settlement, it is uncertain whether, if the case proceeded to trial, this multistate class of consumers would have created 'intractable

management problems' requiring the district court to decertify it") (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Second, the settlement and Class Period extends back to January 1, 2017, a window that would be unavailable to most Settlement Class members had the cases gone to trial, given the statute of limitation arguments that likely would have been asserted by Defendant.

Third, with respect to the injunctive relief provided, since there is no federal or state mandate requiring an expiration date on bonded abrasive discs, Plaintiff's best hope for injunctive relief at trial would be labeling changes. But here, Defendant has agreed to not only change its labeling practices, but to make changes to its website and marketing materials that will better inform the end user. Doc. 53-1 at § 4.1 – 4.2; *see also* Ex. 2.

The injunctive relief provided by the Agreement benefits all Settlement Class members, as well as all current and future consumers. Plaintiff's economic expert calculates the value of this injunctive relief component to be over $180 million. *See* Doc. 58-2, Report of Shawn D. Fox. The injunctive relief *alone* weighs in favor of approving the proposed settlement,[2] or at the very least, should be given great weight

---

[2] *See, e.g., In re Frito-Lay N. Am., Inc. "All Natural" Litig.*, No. 12-2413 (E.D.N.Y. Nov. 14, 2017) (approving nationwide settlement of food labeling class action that provided only injunctive relief); *Guttmann v. Ole Mexican Foods, Inc.*, No. 14-CV-04845-HSG, 2016 WL 9107426, at *1 (N.D. Cal. Aug. 1, 2016) (approving nationwide settlement of food class action that enjoined defendant from using certain ingredient for multi-year period); *Littlejohn v. Ferrara Candy Company*, No. 18-0658, 2019 WL2514720 (S.D. Cal. June 17, 2019) (approving nationwide settlement of food labeling class action that provided only injunctive relief in the form of labeling changes).

and "properly considered as part of a court's analysis of whether a settlement is fair, reasonable, and adequate." *Swinton*, 454 F. Supp. 3d at 862; *see also Keil*, 862 F.3d at 697 (finding settlement to be fair, reasonable, and adequate in part because "class members…will benefit from the additional injunctive relief that the settlement provides"); *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, 2011 WL 1790603, at *3–4 (noting the presence of injunctive relief as one factor indicating the settlement was fair, reasonable, and adequate). This is true even if the Settlement Class is certified under Rule 23(b)(3). *See* FED. R. CIV. P. 23(b)(2), (b)(3); *In re BPA*, 2011 WL 1790603 at *3-4, *7 (considering injunctive relief in the fairness, reasonableness, and adequacy analysis and thereafter certifying the class under Rule 23(b)(3)).

Also, the release provided by the Agreement satisfies the principle that "'Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2016 WL 6963058, at *3 (W.D. Mo. Sept. 2, 2016) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005)). Here, the release provided encompasses merely those claims that could have been alleged in this lawsuit and with respect to only those Covered Products included in the complaint. Doc. 53-1 at § 2.24. Additionally, as this Court previously noted, the release does not encompass claims for personal injury. Doc. 54 at 3, fn. 4.

The Settlement provides extraordinary relief, particularly in light of the following Rule 23(e)(2)(B) factors:

**(i) the costs, risks, and delay of trial and appeal**

Although Plaintiff believes strongly in the merits of his claims, a great number of uncertainties with respect to dispositive motion practice, class certification, trial, and appeal weigh in favor of a guaranteed resolution of this Action. The same is true for the potential costs and delays associated with same.

First, this case involved novel and complex factual issues, creating a risk of an unfavorable trial outcome. The factual scenario (expired abrasive wheels) was novel, and Plaintiff did not have the benefit of legal precedent with which to assess the viability of the claims, or how they would be received by a jury. There also was no state or federal mandate that compelled the abrasive industry to adopt Plaintiff's theory of liability.

Second, this case presented complex legal issues creating risks at both the trial and appellate levels. Several courts have recognized that multi-state consumer protection class actions present significant risks, such as choice-of-law and class certification issues. *See, e.g., Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062–63 (D. Minn. 2010) (recognizing the risk involved in case implicating different state laws and noting that "[e]ven if Plaintiffs had obtained class certification, the trial of their claims under multiple state consumer laws would have required substantial preparation and involved the presentation of dozens of witnesses and numerous experts, with no assurance of a favorable outcome"). Further, this case involved legal issues that were unique (such as the benefit of the bargain theory and the standard of care of an abrasive wheel supplier), creating a risk that any successful verdict may be overturned on appeal.

17

Even assuming Plaintiff prevailed at class certification, the Parties were going to engage in a contested battle of the experts and motions to exclude the opinions of the experts would have been filed. The potential exclusion of even one of Plaintiff's experts could have been fatal to his case at trial.

Finally, even if Plaintiff overcame each of these significant risks, the significant delay in benefits due to trial and appeals weigh in favor of final approval. And regardless of the outcome, lengthy appeals would be likely.

In sum, the Agreement brings the certainty of significant injunctive relief and substantial monetary relief now, rather than an uncertain value to an uncertain number of people at an uncertain time after protracted, risky and costly litigation involving complex and changing law. This sub-factor weighs heavily in favor of final approval.

### (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims

The Parties and the Settlement Administrator utilized an effective method to process Settlement Class member claims and distribute relief. Since the Claim Period concluded, the Settlement Administrator has been reviewing all Claim Forms to determine whether they are timely and valid. Doc. 53-1 at § 3.5. Thereafter, the Settlement Administrator will calculate and determine whether claims for Benefit Amounts are approved. *Id.* 3.6-3.9. This evaluation process is currently underway. Ex. 1 at ¶¶ 15-16.

Settlement Class members submitted a Claim Form for either Tier 1 or Tier 2 benefits. Tier 1 provides benefits of up to $10 per household without proof of purchase.

18

Tier 2 provides benefits of up to $50 per household with proof of purchase. *Id.* § 3.6.

Valid claims will be paid through the Settlement Class member's chosen cost-effective

payment option, including various digital payment methods or paper check.

### (iii) the terms of any proposed award of attorney's fees, including timing of payment

Defendant has agreed to pay Class Counsels' attorneys' fees and litigation costs

not to exceed $520,000. Doc. 53-1 at § 5.1.[3] Regarding the reasonableness of the fee

award, Plaintiff respectfully refers the Court to its fee motion. *See generally*, Doc. 58.

With respect to the timing of payment, Defendant agrees to pay any attorneys' fees

and costs awarded within ten (10) business days of the Final Effective Date. Doc. 53-

1 at § 5.1.

### (iv) any agreement required to be identified under Rule 23(e)(3)

There are no Rule 23(e) agreements. Other than the Settlement Agreement,

there is no "agreement made in connection with the settlement proposal." Fed. R. Civ.

P. 23(e)(3); Doc. 58-1 at ¶ 12.

### d. The Agreement treats Settlement Class members equitably relative to each other

The Agreement treats Settlement Class members fairly and equitably. Under

Rule 23(e)(2)(D), the court considers whether the Agreement "treats class members

equitably relative to each other."[4] Notably, there is no requirement that a settlement

---

[3] The Supreme Court has expressed a preference that parties agree to the amount of the fee, noting that a "request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the Parties have done just that.

[4] With respect to the service award provided under the Agreement, Plaintiff respectfully refers the Court to its Motion for Attorneys' Fees. Doc. 58.

treat class members *equally*. Rather, "in evaluating the strength of the plaintiffs' case and the potential value, the district court must take into account the interests of the entire class—not merely the named plaintiffs. Thus, it must balance the claims of those with potentially substantial damages to those with potentially minimal or insignificant damages." *Marshall v. Nat'l Football League*, 787 F.3d 502, 519–20 (8th Cir. 2015). Where a settlement provides different tiers of relief, it is not inequitable so long as "the differences in the benefits bestowed [them] reflect the differences in their respective injuries and the strength of their respective claims." *Swinton*, 454 F. Supp. 3d at 875.

Here, all Settlement Class members and future consumers will receive the benefits of injunctive relief: a safer product with a clear warning explaining that bonded abrasives expire.

In addition, all Settlement Class members who submitted valid claims will be entitled to cash payments. Settlement Class members providing proof of purchase can recover up to $50, whereby those without proof of purchase can recover $2.50 per unit purchased up to 4 units (up to $10 per household). Thus, the more evidence a Settlement Class member has, the more he or she will receive. Further, the Agreement makes no distinction as to the geographic location or date purchased, further underscoring the equitable treatment of Settlement Class members.

For all of the reasons provided above, all of the Rule 23(e) factors weigh in favor of final approval.

### 3. The Agreement is also fair, reasonable, and adequate under the Eighth Circuit's additional *Van Horn* factors

The Eighth Circuit's *Van Horn* factors support a finding that the Agreement is fair, reasonable, and adequate. *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). The Eighth Circuit has for decades required a district court to consider four factors in making that determination: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Van Horn*, 840 F.2d at 607). Here, the Agreement meets the two *Van Horn* factors that are not expressly incorporated into the 2018 amendments to Rule 23(e)(2) discussed above.

### a. Defendant's financial condition

This factor neither weighs for nor against final approval. Defendant is a private company, so its financial condition is not public. However, according to a recent press release issued by Defendant, it is in the process of building a "new, state-of the-art 531,00 sq. ft. warehouse and distribution facility to open in…North Carolina in early 2024."[5] Defendant's President and CEO, Russell Kohl, is quoted as saying, "By doubling our current storage capacity, we will continue to dominate the industry by getting more Diablo products in the hands of our dealers and users at a

---

[5] *Diablo/Freud Tools Announces World Class Warehouse & Distribution Center Expansion to Debut in Kernersville, NC*. Diablo Tools. Accessible at, https://www.diablotools.com/company/press/110681 (last accessed November 22, 2023).

faster rate." *Id.* Plainly, Defendant is "in good financial standing, which would permit it to adequately pay for its settlement obligations[.]" *See Marshall*, 787 F.3d at 512. This factor is therefore neutral. *Id.*; *accord, In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968 (8th Cir. 2018); *Keil*, 862 F.3d at 697–98.

### b. The amount of opposition to the Settlement

There are no objections and no opt-outs. Notably, the Settlement was so strong that it did not even attract "professional objectors" who typically object to settlements. This also weighs in favor of final approval. *See, e,g., Kautsch v. Premier Commc'ns*, No. 06-CV-04035-NKL, 2008 WL 11426766, at *3 (W.D. Mo. Nov. 20, 2008) (finding that the absence of objections to the settlement demonstrated that it was "fair, reasonable, and adequate").

## C. Notice Provided to the Settlement Class Satisfied Due Process

"The United States Supreme Court has stated notice must 'apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 211 (W.D. Mo. 2017) (citation omitted). "[N]otice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal quotations and citation omitted). "What constitutes the best notice practicable under the circumstances depends on several factors, including the size of the class, whether the class members can be easily identified, and the probability that notice will reach the intended persons." *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL

22

3872181, at *13 (W.D. Mo. July 25, 2013) (citation omitted). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Evans & Green, LLP v. That's Great News, LLC*, No. 11-3340-CV-S-ODS, 2012 WL 4888471, at *4 (W.D. Mo. Oct. 15, 2012) (citation omitted).

Plaintiff submits that the Notice Program as implemented by the Settlement Administrator satisfied the requirements of due process. Notice was provided to Settlement Class members as discussed herein. *See* Part II(E), *supra*; Ex. 1 at ¶¶ 4-12. The Notice Program achieved the 70% reach and frequency described therein, which is within the range deemed reasonable by the Federal Judicial Center. *See* Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist & Plain Language Guide* 3 (2010) ("It is reasonable to reach between 70-95% of the class."). The Notice Program and class notice met the requirements of Rule 23 and due process and provided the best notice practicable under the circumstances here.

## IV.  CONCLUSION

For all of the aforementioned reasons, Plaintiff's Motion should be granted in its entirety, and Plaintiff respectfully requests that the Court grant Final Approval of the Settlement.

Dated: December 1, 2023

Respectfully submitted,

HUMPHREY FARRINGTON & MCCLAIN, P.C.

*/s/ Paul D. Anderson*

| Kenneth B. McClain | #32430 |
|---|---|
| Paul D. Anderson | #65354 |
| Jonathan M. Soper | #61204 |
| Nichelle L. Oxley | #65839 |
| Kevin D. Stanley | #48008 |

221 West Lexington, Suite 400
Independence, Missouri 64050
Telephone: (816) 836-5050
Facsimile:  (816) 836-8966
kbm@hfmlegal.com
pda@hfmlegal.com
jms@hfmlegal.com
nlo@hfmlegal.com
kds@hfmlegal.com
**CLASS COUNSEL**

24

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, I electronically transmitted the foregoing document to the Clerk of the United States District Court using the CM/ECF system for filing and service to all parties/counsel registered to received copies in this case.

*/s/ Paul D. Anderson*
Class Counsel

25