# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JEFFREY TUTER, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED; | )<br>)<br>) |
| Plaintiff, | ) Case No. 4:22-cv-00282-RK |
| v. | ) |
| FREUD AMERICA, INC., | ) |
| Defendant. | ) |

## FINAL APPROVAL ORDER

Before the Court are Plaintiff Jeffrey Tuter's unopposed motions for final approval of class action settlement (Doc. 59) and for attorney fees, costs, expenses, and service award (Doc. 57). After careful consideration of the motions and the record in this case, and for the reasons explained below, the Court **ORDERS** that both motions are **GRANTED**. A Final Judgment dismissing the claims with prejudice will be entered contemporaneously.

### Background[1]

This is a class action involving organic bonded abrasive wheels ("Covered Products"). Plaintiff alleged that Defendant Freud America, Inc. supplied and sold Covered Products that were defective because they failed to inform consumers that the Covered Products expired. Plaintiff alleges that without a clear expiration warning and label, consumers, including Plaintiff, are unaware that the Covered Products expire, after which they give way, crack, split, explode, and fail if used after the expiration or shelf-life date. (Doc. 54 at ¶¶ 5, 12.) The only claimed damages in this case are economic damages or benefit-of-the-bargain damages, i.e., that Plaintiff (and the other class member consumers) would have paid less had they known the products were defective as set out above. (*See id.* at ¶ 27 (excluding damages or relief arising from personal injury).)

On September 6, 2023, the Court entered an order preliminarily approving the Parties' settlement Agreement, which would operate as a nationwide settlement of this Action, and directed that notice be given to the Settlement Class members. (Doc. 54.) In addition, the Court appointed

---

[1] This Order incorporates the definitions of the settlement agreement ("Agreement") (*see* Doc. 53-1 at 7-34) for capitalized terms, unless stated otherwise.

Plaintiff's counsel, Humphrey, Farrington & McClain, PC, as Settlement Class Counsel, and appointed a Settlement Administrator to perform and execute the Court-approved Notice Program.

Pursuant to the Court's Preliminary Approval Order, the Settlement Class was notified of the terms of the proposed settlement Agreement and of a Final Approval Hearing. The Court-approved Notice Program was commenced, and notice was issued to members of the Settlement Class via email and widespread internet notice. The Settlement Administrator also established a settlement website. The Settlement Administrator has indicated that no Settlement Class member opted out or objected during the established time to do so. (Doc. 63.) Plaintiff filed an unopposed Motion for Final Approval on December 1, 2023. (Doc. 59.) The Court held a Final Approval hearing on December 15, 2023. (*See* Doc. 64.)

## Discussion

In granting preliminary approval, the Court was well informed in concluding it was likely that the Court would be able to approve the Settlement and certify the Settlement Class. As noted above, no Settlement Class member opted out or objected to the Settlement during the time to do so. The Court has considered Plaintiff's Final Approval Motion and the supporting documents, and now confirms that Settlement Class meets the requirements for certification at settlement, and that the Settlement otherwise meets the requirements for final approval.

I. **Final Approval of Class Action Settlement**

   A. **Class Certification**

The Settlement Class is defined as follows:

All Persons who purchased one or more Covered Products at retail in the United States and its territories during the Class Period. Excluded from the Settlement Class are: (i) Defendant and its employees; (ii) any Person who properly and timely opts out pursuant to this Agreement; (iii) federal, state, and local governments (including all agencies and subdivisions thereof (but employees thereof are not excluded)); and (iv) any judge who presides over the consideration of whether to approve the settlement of this class action and any member of their immediate family.

To certify a Settlement Class for purposes of the settlement, the Court must conclude that the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and at least one of the requirements of Rule 23(b) are satisfied. *See Vogt v. State Farm Life Ins. Co.*, No. 2:16-cv-04170-NKL, 2018 WL 1955425, at *2 (W.D. Mo. Apr. 24, 2018). Here, the Court finds that each element of Rule 23(a) and subsection (3) of Rule 24(b) are satisfied, and that final approval is therefore warranted.

2

As to the requirements under Rule 23(a), the Court finds as follows:

First, the Court finds that the Settlement Class is "so numerous that joinder of all class members is impracticable." Rule 23(a)(1). The Settlement Class is sufficiently numerous in this case, evidenced in part by the fact that Defendant sold more than ten million bonded abrasive wheels through third-party distributors and retailers in 2021 alone. The magnitude of the class makes joinder impracticable.

Second, the Court finds that there is at least one "question[] of law or fact common to the class." Rule 23(a)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[E]ven a single common question will do," so long as that question "will resolve an issue that is central to the validity of each one of the claims in one stroke") (cleaned up). Each of the Covered Products purchased by the Settlement Class members suffers the same alleged defect—the lack of a clear expiration date despite the fact that each Covered Product does have a shelf life after which it cannot be used because it will fail. As a result, each Settlement Class member suffered the same financial or economic harm, that is, that the Covered Products were worth less than the actual sale price under a benefit-of-the-bargain theory of economic harm.

Third, the Court finds that the claims or defenses of Plaintiff is typical of those of the Settlement Class under Rule 23(a)(3), particularly to the extent that Plaintiff's claims "arise[] from the same event or course of conduct as the class claims, and give[] rise to the same legal or remedial theory." *Vogt*, 2018 WL 1955425, at *5 (citation and quotation marks omitted). Plaintiff's claims and the claims of the Settlement Class arise from the same event or course of conduct—the purchase of a Covered Product without a clear expiration date despite having an expiration date or determinable shelf-life.

Fourth, the Court finds that Plaintiff has fairly and adequately protected the interests of the class and will do so accordingly. Rule 23(a)(4). The Court finds no conflicts of interest between Plaintiff and the class he seeks to represent. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Next, as to Rule 23(b)(3), the Court finds that common questions of law and fact predominate in this litigation for purposes of certifying a settlement class. The common question on the breach of implied warranty claim is whether the alleged defective Covered Product renders the bonded abrasive wheel unmerchantable. The answer to that question can be proven through common, class-wide proof since the Covered Products suffered the same alleged defect as

3

described above. Moreover, the Court also finds that a class action is superior to individual lawsuits as such individualized litigation would be burdensome and less efficient, considering the economic interests involved.

Accordingly, the Court finally certifies the Settlement Class, appoints Plaintiff to act as the Settlement Class Representative, and appoints Settlement Class Counsel to represent the Settlement Class.

**B.     Class Notice**

The Court confirms the Notice Program was implemented in accordance with the Court's Preliminary Approval Order (Doc. 54). The Court further confirms its prior findings that the Notice Program is the best notice practicable under the circumstances, including individualized notice to Settlement Class members who can be identified through reasonable effort; the Notice Program also fully complies with the Federal Rules of Civil Procedure. In other words, the Notice Program—consisting of both e-mail and internet notice—is reasonably calculated under the circumstances to apprise Settlement Class members of this Action and the terms of the settlement Agreement, including the members' right to object to the settlement Agreement and to opt-out and exclude themselves from the Settlement Class. In short, the Notice Program meets and has met the requirements of Rule 23(c) and the Due Process Clause of the United States Constitution.

**C.     Approval of the Settlement**

To approve a settlement under Rule 23(e), the Court must find that the settlement is "fair, reasonable, and adequate." In doing so, the Court considers various listed factors under Rule 23(e), including the merits of Plaintiff's case, weighed against the terms of the settlement Agreement, Defendant's financial condition, the complexity and expense of further litigation, and opposition to the settlement. *See Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

Members of the Settlement Class have responded overwhelmingly positively; there has been no objection to the settlement Agreement and no Settlement Class member has opted out. Plaintiff and Settlement Class Counsel have adequately represented the Settlement Class as reflected by the active and vigorous litigation in this Action, including responding to requests for additional briefing by the Court. This work culminated in the hard-fought settlement Agreement that resolves these claims nationwide. The settlement Agreement achieved here was the product of arm's-length negotiations through two mediation sessions before a well-respected mediator.

4

Moreover, the Settlement Fund ($1,900,000) is significant, especially in light of the costs, risks, uncertainties, and delay of further litigation in the course of trial and an appeal. The significance of this settlement and the settlement Agreement is highlighted by previous decisions issued by various federal courts, including this Court, in similar bonded abrasive wheel class actions brought by Plaintiff's counsel against other defendants, which were at times favorable to the opposing sides. In addition, the Court reiterates in particular the potential difficulties in obtaining certification of a nationwide litigation class in this product liability consumer-protection Action as the Court previously noted in the Preliminary Approval Order. These considerations soundly weigh in favor of a finding that the settlement Agreement merits final approval under Rule 23(e).

Moreover, the proceeds of the settlement as set out in the Agreement will be distributed among Settlement Class members equitably and relative to one another, primarily in proportion to the number of Covered Products they purchased and proof establishing same. And finally, in addition to the monetary relief, the injunctive relief obtained in this Action through the settlement Agreement is singularly significant. In particular, Settlement Class Counsel negotiated relief that obligates Defendant (without an existing explicit federal or statutory mandate to do so) to change their labeling and provide a clear warning to consumers about the Covered Products' expiration date guaranteed for a term of three years. Settlement Class Counsel's expert values this injunctive relief at approximately $180 million. (Doc. 58-2 at 1-10.)

For these reasons and after careful consideration, the Court finds that the settlement and settlement Agreement is fair, reasonable, and adequate, and that each of the factors listed in Rule 23(e) and otherwise identified by the Eighth Circuit supports final approval.

**D.     Releases**

As of the Final Effective Date, the Releasing Parties shall be deemed to waive and release and absolutely and forever discharge Defendant and all Released Parties from any and all Released Claims. As set forth in the settlement Agreement, "Releasing Parties," "Released Parties," and "Released Claims" mean the following:

(1) "Releasing Parties" means and refers to the members of the Settlement Class (whether or not they object to the settlement Agreement and whether or not they receive a Benefit Amount) and their members, agents, attorneys, partners, joint venturers, affiliates, predecessors, successors,

spouses, heirs, assigns, insurers, and any other Persons or entities claiming rights or interests by or through the Settlement Class;

(2) "Released Parties" means and refers to Defendant and its members, agents, attorneys, partners, joint venturers, predecessors, successors, assigns, insurers, shareholders, executives, employees, consultants, independent contractors, directors, officers, principals, managers, and any direct and indirect parent companies, affiliates and subsidiaries; and

(3) "Released Claims" means and refers to any claim, liability, right, demand, suit, matter, obligation, lien, damage, punitive damage, exemplary damage, penalty, loss, cost, expense, debt, action, or cause of action, of every kind and/or nature whatsoever whether now known or unknown, suspected or unsuspected, asserted or unasserted, latent or patent, which any Releasing Party now has, or at any time ever had, regardless of legal theory or type or amount of relief or damages claimed, which: (i) in any way arises out of, is based on, or relates in any way to representations or omissions pertaining to the expiration, shelf-life, or other date on or regarding the Covered Products, including how the date is determined, its length, and what it means; or (ii) is asserted in the Complaint filed in this Action. However, Released Claims shall not include any claims for personal injury.

### E.   Continuing Jurisdiction

The Court retains jurisdiction over this Action and the Parties, attorneys, and Settlement Class members for all matters relating to this Action, including (without limitation) the administration, interpretation, and effectuation or enforcement of the settlement Agreement, this Order, and the contemporaneously entered Final Judgment. The Settlement Class Representative and Settlement Class members are permanently enjoined from filing, prosecuting, maintaining, or continuing litigation based on or related to the Released Claims. This permanent bar and injunction is necessary to protect and effectuate the settlement Agreement, this Order, and this Court's authority to effectuate the settlement Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

## II.   Attorney Fees, Costs/Expenses, and Service Award

Plaintiff filed a motion for attorney fees, reimbursement of costs/expenses, and service award to the named Plaintiff on November 6, 2023. (Doc. 58.) Plaintiff requests three awards be paid from the Settlement Fund, as follows: (1) attorney fees in the amount of $492,650.75; (2) reimbursement of litigation costs and expenses in the amount of $27,349.25; and (3) a service

award to Plaintiff in the amount of $5,000. (Doc. 57.) Defendant did not file a response, and therefore the Court treats the motion as unopposed.

### A. Attorney Fees

Under Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement." As the Supreme Court has recognized, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In considering whether an award for attorney fees is reasonable, the Court may, in its discretion, look to a "lodestar" methodology or "percentage-of-recovery" methodology. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017). The former looks to the hours of attorney work in the case multiplied by a reasonable hourly rate "which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id.* (citation and quotation marks omitted). The latter awards a percentage or "some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.* (citation and quotation marks omitted). The use of the percentage-of-recovery methodology is "well established" in the Eighth Circuit in the context of a common fund settlement action. *In re Xcel Energy, Inc., Sec'y, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)).

Under either methodology, the touchstone for an award of attorney fees is an award's reasonableness. The Eighth Circuit has explained that in evaluating the reasonableness of an award of attorney fees, the Court should consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved in the litigation; (3) the legal skills required; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances of the matter; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *In re Target Corp. Customer Data Sec'y Breach Litig.*, 892 F.3d 968, 977 & n.7 (8th Cir. 2018); *see also League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937, 941 (8th Cir. 2021) (explaining that the district court should consider the factors that are "relevant to" the litigation at hand) (citation and quotation marks omitted).

7

Here, Settlement Class Counsel seeks an award of $492,650.75. This is less than 26 percent of the Settlement Fund. As indicated above, no objections were filed by the Settlement Class members at all much less as to the requested attorney fee award. Working on a contingency-fee basis and taking on the risk of a novel and contested litigation, Settlement Class Counsel received an unquestionably positive outcome on behalf of the class. In addition to the monetary relief, Settlement Class Counsel obtained effective and valuable injunctive relief as to Settlement Class members and future consumers of the Covered Products alike. In light of the time, effort, skill, and expertise exhibited by Settlement Class Counsel in the course of litigating this Action, after careful review of the record and submissions in support of the motion and consideration of the relevant law, the Court finds that the requested award of attorney fees in the approximate amount of 26 precent is reasonable and fair. *See, e.g. In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving fee award representing 36 percent of the class action settlement fund); *Burnett v. Conseco Life Ins. Co.*, No. 1:18-cv-00200-JPH-DML, 2021 WL 119205, at *9 (S.D. Ind. Jan. 13, 2021) (awarding $9 million in attorney fees from a $27 million settlement fund); *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) (recognizing that "Courts in this Circuit and this District have frequently awarded attorney fees of 33⅓%-36% of a common fund") (collecting cases). Accordingly, the Court awards Settlement Class Counsel attorney fees in the amount of $492,650.75.[2]

### B. Costs and Expenses

Second, under the terms of the settlement Agreement, Settlement Class Counsel may also seek reimbursement of costs and expenses. Settlement Class Counsel has submitted $27,349.95 in costs and expenses for reimbursement. No objections were received to the request for the reimbursement of costs and expenses, either. It is well established that "[r]easonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.'" *Yarrington v. Solvay*

---

[2] The corresponding lodestar multiplier supports the Court's finding that the requested award is reasonable. *See Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (recognizing the court may, but is not required to, verify the reasonableness of an award by looking to the lodestar methodology as a crosscheck). Accepting Settlement Class Counsel's lodestar multiplier of 2.5 based on Settlement Class Counsel's affidavit (*see* Docs. 58 at 8; 58-1 at 3-5), the lodestar multiplier is reasonable and further supports the reasonableness of the percentage-based award. *See In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (finding a lodestar multiplier of 5.61 is not unreasonable); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (finding a lodestar multiplier of 6.96 is not unreasonable).

*Pharms., Inc.*, 697 F. Supp. 2d 1057, 1067 (D. Minn. 2010) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). The Court finds that these costs and expenses set forth by Settlement Class Counsel in the motion for attorney fees and costs were reasonably incurred and are reimbursable from the Settlement Fund. Accordingly, the Court awards Settlement Class Counsel costs and expenses in the amount of $27,349.95.

    **C.**    **Service Award**

Finally, Plaintiff requests a service award of $5,000. No objections to the service award were submitted. Courts routinely approve service awards to compensate class representatives for the services they provide and the risks they incur on behalf of the class. The factors for deciding whether the service awards are warranted are: "(1) actions the plaintiff[] took to protect the class's interests, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiff[] expended in pursuing litigation." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017). Here, the settlement Agreement was the product of Plaintiff pursuing this Action and agreeing to serve as the Settlement Class Representative. The Settlement Class Representative (Plaintiff) actively participated in the litigation, including responding to discovery requests and ultimately participating in the settlement process. His action was necessary and benefited the entire Settlement Class in achieving this settlement. Accordingly, the Court awards Plaintiff a service award of $5,000.

    **IT IS SO ORDERED**.

    s/ Roseann A. Ketchmark
    ROSEANN A. KETCHMARK, JUDGE
    UNITED STATES DISTRICT COURT

DATED: January 17, 2024

9

Case 4:22-cv-00282-RK   Document 65   Filed 01/17/24   Page 9 of 9